UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY, INC., a Washington corporation,<br><br>            Plaintiff,<br><br>v.<br><br>BUGABOOS EYEWEAR CORP., a Canadian Corporation, et al.,<br><br>            Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 09-CV-2037-JLS (JMA)<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS [Doc. Nos. 42, 43]** |

Presently before the Court is a Joint Motion for Determination of Discovery Dispute Re: Defendants' Motion to Compel Production of Privileged Documents (hereinafter "Joint Motion" or "Joint Mot."). [Doc. Nos. 42, 43.] For the reasons set forth below, Defendants' motion to compel is **DENIED** without prejudice.

**I.     BACKGROUND**

Plaintiff/Counterdefendant Oakley, Inc. (hereinafter "Oakley") commenced this patent and trademark infringement action on September 17, 2009. [Doc. No. 1.] Oakley filed a First Amended Complaint on November 6, 2009. [Doc. No. 7.] Suntech Optics, Inc. filed an Answer and Counterclaims on May 17, 2010. [Doc. No. 12.] The Seventh Counterclaim asserts a false marking claim against Oakley which alleges,

"Oakley has violated 35 U.S.C. § 292(a), by marking over one-hundred of its products with language indicating that the products are protected by patents which do not cover the marked products because: (i) a plurality of the patents have expired . . ., (ii) most if not all of the patents listed on Oakley's marking documents do not actually cover the Oakley products, and . . . (iii) several of the listed patents in Oakley's marking are not even owned by Oakley . . . ." Answer and Countercls., ¶ 43.  The counterclaim further alleges, "each of [Oakley's Glasses] are sold with a box or package directing a purchaser to examine the packaging or enclosed warranty card for a list of patents covering the enclosed product." Id., ¶ 46.  "[T]he Oakley Glasses sold in the United States within the past few years come with either one of two listings of patents on the warranty card:  (i) '© 2005 Oakley, Inc. www.oakley.com 91-014 REV. J 01/07' . . . or (ii) '© 2005 Oakley, Inc. www.oakley.com 91-014 REV. K 04/09' . . ." Id.  Additionally, "Oakley has and continues to mark additional products, product packaging, and/or advertising with expired, surrendered, inapplicable, and/or unenforceable United States patent numbers." Id., § 77.  Oakley filed an answer to the counterclaims on May 21, 2010.  [Doc. No. 15.]

On August 23, 2010, the Court granted a joint motion for name change of Defendants/Counterclaimants from Suntech Optics, Inc. to Bugaboos Eyewear Corp. and Bugaboos Eyewear (U.S.) Inc. (hereinafter collectively "Bugaboos").  [Doc. No. 26.]  On August 26, 2010, Oakley filed a motion for summary judgment on Bugaboos' false marking counterclaim.  [Doc. No. 27.]  The motion is presently set for hearing on November 17, 2010 before the Honorable Janis L. Sammartino.  [Doc. No. 41.]  On August 30, 2010, Oakley filed a motion for leave to amend answer to counterclaims.  [Doc. No. 29.]  That motion is set for hearing on November 19, 2010 before Judge Sammartino. Id.

//
//
//

## II.   LEGAL STANDARDS

### A.   False Marking

The "false marking" statute, 35 U.S.C. § 292, provides, "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; . . . [s]hall be fined not more than $500 for every such offense." 35 U.S.C. § 292(a).  With respect to the "for the purpose of deceiving the public" requirement, the Federal Circuit recently stated, "[U]nder Clontech[1] and under Supreme Court precedent, the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent." Pequignot v. Solo Cup Co., 608 F.3d 1356, 1362-63 (Fed. Cir. 2010).  "[A] good faith belief that an action is appropriate, especially when it is taken for a purpose other than deceiving the public, can negate the inference of a purpose of deceiving the public." Id. at 1364.  A party may, *inter alia*, rely upon the advice of counsel to defeat an inference of intent. Id.

### B.   Attorney-Client Privilege

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." In re EchoStar Communications Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006) (citing Genentech, Inc. v. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)).  Because the attorney-client privilege "impedes full and free discovery of the truth," the privilege is strictly construed. U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).  The burden of establishing that the privilege applies rests upon the party asserting the privilege. U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000); Newport Pacific, Inc. v. County of San Diego, 200 F.R.D. 628, 633 (S.D. Cal. 2001).

When a party puts at issue legal advice it received, e.g., by way of an advice of counsel defense, it waives the attorney-client privilege with respect to those

---

[1] Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347 (Fed. Cir. 2005).

communications. Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1163 (9th Cir. 1992). A party cannot claim that it relied on the advice of counsel, while protecting the communications from disclosure. "[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." In re EchoStar, 448 F.3d at 1301 (citation omitted). "In such a case, the party uses the attorney-client privilege as both a sword and a shield." Id. (citation omitted). "To prevent such abuses, . . . when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." Id.

Disclosure of privileged attorney communications to a third party also constitutes waiver of the attorney-client privilege. Chevron, 974 F.2d at 1162. The disclosure of such communications "constitutes waiver only as to those communications about the matter actually disclosed." Id. (internal quotations and citation omitted).

### C. Work Product Doctrine

"[M]aterials relating to mental impressions, opinions and legal theories of attorneys" are typically protected from disclosure as work product. Thorn EMI N. Am., Inc. v. Micron Tech., 837 F. Supp. 616, 621 (D. Del. 1993) (citing Fed. R. Civ. P. 26(b)(3)). "Like the attorney-client privilege, work product immunity can be waived." Id. However, "a party's assertion of good faith reliance on advice of counsel [does not] necessarily put counsel's work product at issue." Id. at 622. "The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." In re EchoStar, 448 F.3d at 1300. "Counsel's mental impressions, conclusions, opinions or legal theories are not probative [of state of mind] unless they have been communicated to [the] client." Thorn EMI, 837 F. Supp. at 622. This is because "[w]ork-product waiver extends only so far as to inform the court of the [party's] state of mind." In re EchoStar, 448 F.3d at 1303. "Counsel's

opinion is not important for its legal correctness." Id..[2]

## III. DISCUSSION

Bugaboos contends that Oakley has waived the attorney-client privilege pursuant to its assertion of an advice of counsel defense to Bugaboos' false marking counterclaim. Alternatively, Bugaboos argues that Oakley has waived the attorney-client privilege by disclosing certain attorney-client documents and information.

### A. Oakley Has Not Yet Asserted the Advice of Counsel Defense

The parties agree that Oakley has stated *an intent* to rely upon the advice of counsel in defense of the false marking counterclaim. See Joint Mot., Bugaboos' Statement at 3 ("Oakley also indicated its *intent* to rely upon privileged documents in support of a reliance on advice of counsel defense" and "despite its *stated intention* that reliance on the advice of counsel will be central to its defense . . . .") (emphases added); id., Oakley's Statement at 1 (referring to "Oakley's *potential reliance* on the advice-of-counsel defense") (emphasis added). There has been no showing that Oakley has actually *asserted* the advice of counsel defense. A party waives the attorney-client privilege "when [it] defends its actions by disclosing an attorney-client communication . . . ." In re EchoStar, 448 F.3d at 1301. Oakley has not relied upon the advice of counsel to defend itself in any pleadings filed with the Court to date, and there is nothing in the record before the Court that shows that Oakley has produced or presented evidence of its reliance upon the advice of counsel with respect to the false marking counterclaim.

Bugaboos argues that Oakley has waived the attorney-client privilege by filing a proposed amended answer that asserts a reliance on advice of counsel defense. See Joint Mot., Bugaboos' Statement at 1. Oakley did file a proposed amended answer as an exhibit to its pending motion for leave to amend answer to counterclaims. See Mot. for Leave to Amend Answer to Counterclaims, Ex. A [Doc. No. 29-1]. However,

---

[2] Work product may be discoverable if a party waives its immunity and discloses its work product, or if the opposing party demonstrates a "substantial need for the materials." See In re Martin Marietta Corp., 856 F.2d 619, 622-23 (4th Cir. 1988); Fed. R. Civ. P. 26(b)(3). Bugaboos does not, however, seek the production of any work product under these bases.

Bugaboos' argument ignores the fact that Oakley's *proposed* amended answer is exactly that -- a *proposed* pleading that is not yet Oakley's operative pleading in response to Bugaboos' counterclaims -- and that Bugaboos itself has *opposed* the filing of that proposed pleading.  See Bugaboos' Opposition to Oakley's Motion for Leave to Amend Its Answer to Counterclaims [Doc. No. 44].  Given that Oakley's proposed amended answer is a proposed pleading only, and that Oakley *cannot* file it as an operative pleading absent the granting of its pending motion for leave to amend answer to counterclaims or a stipulation between the parties (see Fed. R. Civ. P. 15(a)(2)), the Court finds that the advice of counsel defense has not yet been asserted, and thus the attorney-client privilege has not been waived, by way of Oakley's proposed amended answer.

**B.    There Has Been No Showing that Oakley Produced Documents Reflecting Attorney Advice**

Bugaboos next asserts that Oakley has waived the attorney-client privilege by producing documents reflecting attorney advice.  In support of this argument, Bugaboos observes that Oakley "produced a document from an extensive database maintained by an in-house attorney, Alex Tiquia, and its outside counsel, Gregory Nelson at Weeks Kaufman, reflecting which products the legal counsel concluded are covered by each patent."  Joint Mot., Bugaboos' Statement at 4.  Oakley acknowledges that it did produce "a list of information . . . that identifies which products are covered by which patents."  Oakley contends, however, that "none of these productions are actually privileged documents" as "[t]he list was created by the litigation team specifically in response to the interrogatory; it was not created from a privileged database."  Id., Oakley's Statement at 9.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  Genentech, 122 F.3d at 1415.  Bugaboos has not demonstrated that the above-referenced document was an attorney-client communication made for the purpose of

obtaining legal advice, and Oakley unequivocally states that it was *not* such a communication. The Court cannot find, based on the record before it, that the above document consists of an attorney-client communication such that the attorney-client privilege was waived by way of its production.

### C. Oakley's Privilege Log Descriptions Did Not Waive the Attorney-Client Privilege

Next, Bugaboos contends that Oakley waived the attorney-client privilege by producing a privilege log that contains descriptions containing legal advice from counsel. Joint Mot., Bugaboos' Statement at 5 & Ex. A. The Court has reviewed the entries on the privilege log which Bugaboos asserts waive the attorney-client privilege, and finds they do not divulge the content of any attorney-client communications. Rather, the descriptions reveal only the fact that communications occurred for the purpose of giving or receiving legal advice on certain topics.[3] Indeed, Oakley did nothing more than comply with Rule 26 of the Federal Rules of Civil Procedure, which provides in relevant part:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . ., the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in such a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Because Oakley did not divulge any legal advice in the privilege log entries cited by Bugaboos, Oakley did not waive the attorney-client privilege with respect to these communications.

//

---

[3] Actually, the last two privilege log entries referred to by Bugaboos, Entry Nos. 1008 and 1009, were identified in the privilege log not as attorney-client communications but rather as attorney work product. Joint Mot., Ex. A. As such, these entries cannot support Bugaboos' argument that Oakley waived the *attorney-client privilege* by including these entries on its privilege log. See, e.g., In re EchoStar, 448 F.3d at 1300 ("[t]he attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other.").

**D.   Oakley Did Not Waive the Attorney-Client Privilege in Its Discovery Responses and Meet and Confer Letter**

Bugaboos argues that Oakley waived the attorney-client privilege in its response to Request for Admission No. 7 propounded by Bugaboos upon Oakley. Request for Admission No. 7, and Oakley's response thereto, are as follows:

> Request for Admission No. 7: Admit that [Oakley's warranty card, Rev. K] was drafted with the advice of one or more attorneys.
>
> Response: . . . Oakley admits that it relied on the advice of counsel in preparing all or part of one or more versions of its warranty card, including Rev. K.

Supp. Filing Re Joint Motion [Doc. No. 46] at 5. Oakley's admission that it relied on the advice of counsel to prepare its warranty cards, however, is not tantamount to Oakley waiving the attorney-client privilege to defend itself against Bugaboos' false marking claim. Oakley has simply admitted that it relied on the advice of counsel to prepare its warranty cards. An admission of this type does not waive any privilege. Only if a party relies on the advice of counsel to defend itself or negate an element of a claim is the attorney-client privilege waived. See, e.g., In re EchoStar, 448 F.3d at 1301. Therefore, Oakley did not waive the attorney-client privilege by virtue of its response to Request for Admission No. 7.

Bugaboos further argues that Oakley waived the attorney-client privilege in meet and confer correspondence by stating:

> One prominent supplementation relates to Oakley's privileged documents associated with its intent, decisions, and method of marking patents. This group of documents is substantial and Oakley very much wants to produce these documents to show that there is no merit to your client's false marking claim.

Joint Mot., Bugaboos' Statement at 6 (citing Nelson Letter dated July 29, 2010). The Court declines to construe this language as a present waiver of the attorney-client privilege. While it is clear that Oakley's counsel has engaged in discussions with Bugaboos' counsel regarding Oakley's intent to assert an advice of counsel defense, the associated waiver of the attorney-client privilege, and what the scope of the waiver

ought to be, such discussions do not amount to an actual waiver of the privilege.

### E. Oakley is Not Required to Waive Privilege Now or Relinquish Its Reliance on the Advice of Counsel Defense

Acknowledging Oakley may not yet have waived the attorney-client privilege, Bugaboos argues in the alternative that Oakley must be required to waive the privilege now or relinquish its advice of counsel defense. Joint Mot., Bugaboos' Statement at 6. Bugaboos relies upon authority which disallows a party from using the attorney-client privilege as both a "sword" (by waiving its privilege for favorable advice) and a "shield" (by asserting privilege for unfavorable advice). Id. (citing In re EchoStar, 448 F.3d at 1301). Citation to this authority, however, is premature, as no "sword" has been brandished yet because Oakley has not disclosed any information -- favorable or unfavorable -- to support its intended advice of counsel defense to the false marking claim. One does not brandish the "sword" of attorney-client privileged information, in the context of an advice of counsel defense, until it actually defends itself on the basis of the advice it received. See, e.g., In re EchoStar, 448 F.3d at 1301.

Although Bugaboos argues Oakley has refused to provide information needed to oppose Oakley's pending motion for summary judgment on the basis of privilege, and thus has "shielded" such information from disclosure, this is a shield of a different nature -- that is, the normal shield of privileged information -- and one which Oakley is permitted to use, absent a waiver of privilege. See Fed. R. Civ. P. 26(b) (in general, a party may obtain discovery of any matter so long as it is *nonprivileged* and is relevant to the claim or defense of any party). Further, if Bugaboos believes it needs additional discovery, and that it cannot present facts essential to justify its opposition to the motion for summary judgment without such discovery, its proper recourse is to file an affidavit pursuant to Fed. R. Civ. P. 56(f).

### IV. CONCLUSION

Bugaboos has provided no authority or argument upon which the Court can presently find that Oakley has waived the attorney-client privilege in relation to the false

marking counterclaim.  Moreover, the scope of the subject matter of an attorney-client privilege waiver in this case will be defined by the nature of the advice of counsel relied upon by Oakley.  "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."  Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349-50 (Fed. Cir. 2005).  This, of course, presupposes that a disclosure has already been made.  The Court declines to provide an advisory opinion on the scope of the waiver until the waiver has been made and the advice relied upon has been disclosed.  Accordingly, Bugaboos' motion to compel production of privileged documents is **DENIED** without prejudice.

If, following the issuance of the rulings on Oakley's pending motions and/or upon a waiver by Oakley of the attorney-client privilege, the parties are unable to agree upon the scope of the waiver, the parties shall jointly notify the undersigned's chambers of such fact prior to filing a further Joint Motion for Determination of Discovery Dispute on this topic.

**IT IS SO ORDERED**.

DATED: October 15, 2010

Jan M. Adler
U.S. Magistrate Judge