# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY, INC.,<br><br>                              Plaintiff,<br>vs.<br><br>BUGABOOS EYEWEAR CORP, and<br>BUGABOOS EYEWEAR (U.S.) INC.,<br><br>                              Defendant. | CASE NO. 09CV2037 JLS (JMA)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S SEVENTH COUNTERCLAIM FOR FALSE MARKING**<br><br>(Doc. No. 27) |

Defendants Bugaboos Eyewear, Corp., and Bugaboos Eyewear (U.S.) Inc., (collectively Bugaboos) allege in its counterclaim that Plaintiff Oakley, Inc. (Oakley) falsely marked its products in violation of 35 U.S.C. § 292, the patent false marking statute.  In response, Oakley motions for summary judgment on the issue whether warranty cards—packaged with the eyewear sold—can give rise to a false marking claim.  To make its decision, the Court considers Oakley's motion (Doc. No. 27 (Mot. Summ. J.)),  Bugaboos' response in opposition (Doc. No. 59 (Opp'n)), and Oakley's reply in support.  (Doc. No. 67 (Reply).)  And having done so, the Court **GRANTS** Oakley's motion for summary judgment on the seventh counterclaim with respect to warranty cards.  On a related note, Bugaboos requests the Court delay adjudication of Oakley's motion on two bases: first, that adjudication of Oakley's motion is improper at this time, and second, that Bugaboos requires additional discovery under Federal Rule of Civil Procedure 56(f).  Both requests are **DENIED**.

**BACKGROUND**

Oakley and Bugaboos are both in the eyewear business. On November 6, 2009, Oakley filed a first amended complaint against Bugaboos. (Doc. No. 7 (FAC).) Oakley asserted claims for infringement of U.S. Design Patent D580,963, U.S. Patent 5,387,949, U.S. Patent 5,638,145, Trademark 2,393,107, Trademark 2,900,432, and Trademark 2,768,242. Six months later, Bugaboos filed its answer and counterclaims. (Doc. No. 12 (Counterclaim).) Oakley answered the counterclaims soon thereafter. (Doc. No. 15.) And on August 26, 2010, Oakley filed the present motion for summary judgment on Bugaboos' seventh counterclaim.

Bugaboos' seventh counterclaim is for false marking arising under 35 U.S.C. § 292. Bugaboos contends that Oakley eyewear "are sold with a box or package directing a purchaser to examine the packaging or enclosed warranty card for a list of patents covering the enclosed product." (Counterclaim ¶ 46.) The package states "[t]his product may be protected by one or more U.S. and international patents identified on the packaging or enclosed warranty card." (*Id.*) And the "enclosed warranty card" contains a listing of United States and foreign patents. Each warranty card also states "patents pending in the USA" even though there are allegedly no patents pending. (*Id.* ¶ 62.) And finally, one version of the warranty card not only includes patents that are not owned by Oakley, but also patents that are unrelated to glasses. (*Id.* ¶¶ 75 & 76.)

Oakley understood Bugaboos' counterclaim to mean that "the list of patents on the warranty card constitutes false marking because numerous patents do not all apply to the enclosed products, some patents are expired, and other patents are erroneous numbers." (Mot. Summ. J. at 2.) And based on that understanding, Oakley brings its motion for summary judgment. Oakley argues that the warranty cards and the list of patents found on the warranty cards cannot give rise to liability under § 292 as a matter of law. (*Id.*)

In its opposition to Oakley's motion, Bugaboos also raises two new issues. First, Bugaboos argues that the motion for summary judgment should be denied because Oakley's false marking violations extend beyond the warranty cards. (Opp'n at 22–23.) Second, Bugaboos argues that Oakley's motion is premature and additional time should be granted for Bugaboos to obtain additional discovery. (Opp'n at 23.)

Thus, this Order discusses two topics. The Court will first discuss Oakley's motion for summary judgment. As part of this discussion, the Court will resolve the issue whether Oakley's motion for summary judgment should be denied in light of other potential bases for false marking liability. The second portion of the Order will discuss whether Bugaboos' request for additional discovery under Rule 56(f).

### OAKLEY'S MOTION FOR SUMMARY JUDGMENT

**1. Legal Standard**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**2. Analysis**

Before getting into the nitty-gritty, it helps to visualize the items at issue. When a consumer purchases a pair of Oakley eyewear, the consumer receives a box.[1] After opening it, the purchaser discovers—among other things—a pair of eyewear and a warranty card.

Bugaboos' false marking counterclaim is brought under 35 U.S.C. § 292. Section 292 states in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292. When broken down, the statute has four important parts: (1) the word "patent" or any word or number importing that an article is patented, (2) marked on, affixed to, or used in advertising in connection with, (3) an unpatented article, (4) with intent to deceive the public. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 263 F. Supp. 2d, 780, 791 (D. Del. 2003).

From the statutory morass, a roadmap is revealed. A plaintiff must first find some instance of "the word 'patent' or any word or number conveying that an article is patented." 35 U.S.C. § 292. For the purposes of discussion, the Court refers to this as the "patent coverage language" or "coverage language." The Court uses this instead of "marking," because "marking" in the patent context conjures 35 U.S.C. § 287, the notice statute. And involving § 287 in the fray has only served to confuse the matter.

Once the patent coverage language has been established, the analysis moves to elements two and three. The plaintiff must show that the coverage language is "marked upon" an unpatented article, "affixed to" an unpatented article, or "used in advertising in connection with" an unpatented article. If any of the three occur, the plaintiff must finally establish element four, that the action was done with "intent to deceive the public." 35 U.S.C. § 292.

Oakley moves for summary judgement on the issue whether the warranty card found inside the packaging can give rise to false marking liability. On summary judgment, Oakley bears the

---

[1] The box is often referred to as "packaging.

1  initial burden of showing that the warranty cards do not satisfy § 292's requirements. If Oakley
2  succeeds, the burden is on Bugaboos to show that an issue of material fact remains.

### A. Element One: Patent Coverage Language

The Court begins its analysis with the first element of the statute. In doing so, the Court not only determines the scope of Oakley's motion for summary judgment, but also lays the groundwork for the Order. On the surface, the question seems straightforward: Bugaboos need only identify the "the word 'patent' or any word or number conveying that an article is patented." 35 U.S.C. § 292. But this has been a source of confusion between the parties. And the discussion has meandered down paths that needn't be traveled.

For the purposes of this Order the patent coverage language is the warranty cards and the patents printed on them. Bugaboos' counterclaim focuses entirely on the warranty cards. (*See* Counterclaim ¶¶ 39–87.) And Oakley's motion for summary judgment responded in kind. Oakley understood Bugaboos' counterclaim as alleging that "the warranty card constitutes false marking." (Mot. Summ. J. at 2.) It was not until Bugaboos' opposition to Oakley's motion did Bugaboos raise the possibility of false marking based on something other than warranty cards. (Opp'n at 22–23 (discussing barcodes as potential basis for false marking).) But just because Bugaboos may have found a new source of false marking liability does not widen what is at issue in this motion. Oakley requested summary judgment only on the issue of warranty cards, and that is what the Court will adjudicate.

For clarity's sake, the Court notes what is not at issue in this motion, and that is two things. The barcodes on the boxes are not at issue here. (*See* Opp'n at 22–23.) And more importantly the phrase that is printed on the exterior of the box—"this product may be protected by one or more U.S. and international patents identified on the packaging or enclosed warranty card"—is not at issue either. Bugaboos relies on this language to argue that the warranty cards are subject to § 292 liability. (Opp'n at 12.) But Bugaboos does not argue that the language itself is liable.

This latter point is important in light of *Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010). The parties spill considerable ink discussing the merits and applicability of *Pequignot*, but the discussion is not useful. There were two instances of coverage language at issue in

*Pequignot*. The first was two patents molded onto the product. *Id.* at 1358–59. The second was language printed on the packaging: "This product may be covered by one or more U.S. or foreign pending or issued patents. For details contact www.solocup.com." *Id.* at 1359. The *Pequignot* court indicated that Solo Cup could not be liable for false marking arising from the "may be covered" language because Solo Cup did not have the requisite intent. *Id.* at 1365.

The important distinction between this case and *Pequignot* is that *Pequignot* discussed the "may be covered" language on the packaging. *Id.* Here, the coverage language at issue is not the "may be protected" language on Oakley's box: it is Oakley's warranty cards. Any discussion of *Pequignot* on this matter is irrelevant. If *Pequignot* had discussed whether the contents of the website found at www.solocup.com could be subject to false marking liability, the Court might find the case useful. But it didn't, so the Court doesn't.

The narrow focus of the motion for summary judgment raises another issue. Bugaboos argues that Oakley's motion is not appropriately adjudicated at this time if it focuses on the warranty cards only. Bugaboos argued in oral argument that Federal Rule of Civil Procedure 56 does not allow for the partial adjudication of a claim. The Court disagrees. *See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002). The Court finds it appropriate to determine whether Bugaboos can assert a false marking claim based on the warranty cards. Resolving this issue clarifies and narrows Bugaboos' false marking claim for trial. If there are other bases for § 292 liability, those bases can be resolved another day.

At this point, the Court has determined that the entity satisfying the "the word 'patent' or any word or number conveying that an article is patented" portion of the false marking statute is the warranty card. And with that, the Court moves to the next two elements.

### B. *Elements Two and Three*

These elements—particularly element two—constitute the main dispute. Whether the warranty cards satisfy these elements determines whether Oakley has met its burden on summary judgment. And after considering the matter, the Court finds that no issue of material fact remains. The warranty cards cannot be subject to § 292 liability as a matter of law.

Elements two and three of the statute are: "(2) marked on, affixed to, or used in

1  advertisement in connection with, (3) an unpatented article." "Unpatented article" has been
2  defined in the § 292 context, but the Court will not reproduce that definition here. Instead, the
3  Court will assume that every pair of Oakley eyewear constitutes a § 292 unpatented article. This
4  limits the question to whether the warranty cards are "marked on, affixed to, or used in advertising
5  in connection with" the co-packaged eyewear. The Court discusses each in turn.

6  *(1)    Marked On*

7  Here, the issue is whether warranty cards and the list of patents printed on the warranty
8  cards can be subject to the false marking statute by virtue of being "marked on" an unpatented
9  article, the Oakley eyewear.  The operative phrase is "marked upon."

10  It is undisputed that the neither the warranty card nor the contents of the warranty card are
11  marked upon the eyewear. This is not fatal to Bugaboos' false marking claim, however, because it
12  is possible for markings on the packaging of an item to be subject to the false marking statute. *See*
13  *Pequignot*, 608 F.3d at 1365. But again the problem is that neither the warranty card nor its
14  contents are printed on the packaging—they are found inside.

15  Bugaboos argues that the warranty cards are incorporated onto the packaging because
16  printed on the packaging is the statement "this product may be protected by one or more U.S. and
17  international patents identified on the packaging or enclosed warranty card." (*See* Opp'n at 12.)
18  But Bugaboos provides no authority for the argument that incorporation is sufficient to meet the
19  "marks upon" requirement. And the Court finds the notion contrary to the plain meaning of the
20  language.

21  On this issue, the parties expend considerable ink discussing the finer points of patent
22  law—none of which the Court finds relevant. For instance, the parties contest whether a marking
23  must provide constructive notice under 35 U.S.C. § 287 before it can be subject to false marking
24  liability. That discussion sheds no light on whether the warranty cards in question are "marked
25  upon" anything. The Court can find no authority that patent coverage language must be marked in
26  a way that satisfies § 287 before it is "marked upon" for the purposes of the false marking statute.

27  Bugaboos does raise one case that could provide support for the proposition that a coverage
28  found inside packaging can satisfy the "marked upon" portion of the statute. The district court in

1  *Clontech*, held a bench trial concerning, among other things, false marking of Invitrogen's
2  products. One finding of fact was that Invitrogen had marked "the product profile sheets" of its
3  products. *Clontech*, 263 F. Supp. 2d at 788. The product profile sheets were, at least according to
4  Bugaboos, placed "inside product packages." (Opp'n at 15.) The court later held that Invitrogen
5  had falsely marked its products but that it did not have the requisite intent for liability under § 292.
6  *Clontech*, 263 F. Supp. 2d at 793. Based on these facts, Bugaboos contends that packaging inserts
7  can be "false marking within the statute." (Opp'n at 15.)

8        A closer reading of *Clontech* proves the issue less clear cut. The district court found that
9  Invitrogen "marked the product profile sheets of SS, SSII, kits including SSII, and cDNA
10 libraries." *Clontech*, 263 F. Supp. 2d at 788. And the remainder of the decision uses the word
11 "products" when indicating that items were wrongly marked. The *Clontech* court never explicitly
12 stated that the product profile sheets were subject to the false marking statute.

13       In fact, the issue of wrongful marking was a non-issue; Invitrogen conceded the point. The
14 *Clontech* court never discussed out what constituted the patent coverage language. It didn't need
15 to because plenty of items clearly satisfied that requirement. Instead, "the gravamen of plaintiff's
16 false marking claim [was] whether or not defendant marked its products 'with intent to deceive the
17 public.'" *Id.* at 792. Given the facts of the case, this Court will not infer from *Clontech* that items
18 found inside the packaging satisfy the "marks upon" language of the false marking statute.

19       The Court finds, as a matter of law, that the warranty cards and the patents listed on them
20 cannot be subject to the false marking statute under the "marks upon" language. The warranty
21 cards are not marked upon the glasses or the packaging. The statutory language seems clear, and
22 the Court applies it accordingly.

23 *(2)  Affixed To*

24       As noted before, each box contains a warranty card and a pair of eyewear. The issue here
25 is whether the warranty cards are affixed to the eyewear in a manner subjecting the warranty cards
26 to false marking liability. Bugaboos provides that "a common definition of the word 'affix' is to
27 'attach in any way.'" (Opp'n at 17.) And Bugaboos argues that the warranty card is attached to
28 "each Oakley eyewear product by virtue of the way in which they are tightly packaged with each

product." (*Id.*) But this argument fails as a matter of law: one pea in a pod is not affixed to the other. While the warranty card and the eyewear are tightly packaged together, doing so does not render one affixed to the other.

*(3)   Used in Advertising in Connection With*

The final issue is whether the warranty cards are "used in advertising in connection with" the eyewear, and thus subject to false marking liability.

The first step is to determine whether "advertising" has a "plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). "Advertising" is defined as "the action of calling something to the attention of the public especially by paid announcements." *Advertising*, Merriam-Webster.com, http://www.merriam-webster.com (last visited November 10, 2010).

"Case law interpreting a similar term under the Lanham Act provides further guidance.'" *Inventorprise, Inc. v. Target Corp.*, 2009 WL 3644076 (N.D.N.Y Nov. 2, 2009). The Lanham Act provides, in relevant part, that "to constitute commercial advertising or promotion, a statement of fact must be: . . . (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir.1999)).

But this definition is actually too broad for our purposes. For where the Lanham Act concerns both "advertising" and "promotion," the patent false marking statute concerns only "advertising." *See Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) (internal quotations omitted). Thus, the false marking statute captures a narrower scope of activities than the Lanham Act.

Given the plain meaning of "advertising" and the body of law interpreting "advertising" in the Lanham context, the Court finds that Oakley's warranty cards are not "advertising" subject to false marking liability. Oakley's warranty cards are found inside the packaging; they are invisible

until the product is purchased and the packaging opened. And in that regard, they are not used to call something to the attention of the public by way of paid announcement. *Advertising*, Merriam-Webster.com, http://www.merriam-webster.com. It would be impossible for them to call attention to the eyewear before the eyewear is purchased.

The Lanham Act provides additional support. The Court finds no situation in which the warranty cards, contained inside the packaging, could influence customers to buy Oakley's eyewear. *See Newcal Indus.*, 513 F.3d at 1054. And because the warranty cards are accessible only after the product is sold, the warranty cards are not disseminated to the "relevant purchasing public." *See id.* Thus, to the extent the Lanham Act is relevant, it supports the finding that the warranty cards are not "advertising" subject to false marking penalties.

Many courts have cited to *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 827 F. Supp. 957 (S.D.N.Y. July 12,1993), for the proposition that "'uses in advertising' cannot refer to any and all documents by which the word "patent" is brought to the attention of the public; it can only refer to use of the word "patent" in publications which are designed to promote the allegedly unpatented product, namely, advertisements." *Accent Designs*, 827 F. Supp. at 968–69. The language supports this Court's position. But in citing to it, the Court notes that the *Accent Designs* court ultimately rejected that line of reasoning as being too narrow in the context of that case. Under the facts of this case, however, the Court finds the reasoning applicable and convincing.

Bugaboos attempts to create an issue of material fact regarding the warranty cards status as "advertisement" by entering the declaration of an expert witness. (Opp'n, Nunes Decl.) But the expert's testimony is irrelevant under the circumstances because, as noted above, statutory interpretation falls under the purview of the Court. And having interpreted the meaning of "advertising" as a matter of law, the expert's testimony provides little to the discussion.

At oral argument, Bugaboos argued that the warranty cards also constitute advertising sufficient for § 292 liability because they are handed out to customers and given away separate from eyewear. And thus, the warranty cards are used in advertising independent from their inclusion in the product packaging. But to find that this action satisfies § 292 would ignore a portion of the statute.

1      Section § 292 states that the coverage language must be "use[d] in advertising in
2 connection with any unpatented article." 35 U.S.C. § 292. If the Court accepted Bugaboos'
3 argument that distributing warranty cards separate from eyewear constitutes advertising sufficient
4 to satisfy § 292, the Court would have to ignore the "in connection with" language. Even if
5 Bugaboos' allegations were true, there would not be a connection between the coverage language
6 and an unpatented product in that situation. No connection exists when the warranty
7 cards—which do not reference specific products—are separated from products. Consumers would
8 not know what products the warranty cards referred to.
9      After construing "advertising" as it is found in the false marking statute, the Court finds
10 that Oakley's warranty cards are not subject to false marking liability on that grounds that they are
11 "use[d] in advertising in connection with any unpatented article." 35 U.S.C. § 292. Considering
12 the plain meaning of "advertising" and its construction in the Lanham context, the warranty cards
13 and their use do not constitute advertising.

14 **3.     Conclusion**

15      Having determined that the warranty cards are the patent coverage language at issue, the
16 Court then considered whether the warranty cards could satisfy elements two and three of § 292.
17 This portion of the analysis formed the core of Oakley's motion summary judgment: simply that
18 the warranty cards could not be subject to the false marking statute because the warranty cards are
19 not "marked upon," "affixed to," or "used in advertising in connection with" an unpatented article.
20 To simplify the analysis, the Court assumed, without deciding, that all Oakley eyewear was
21 unpatented for § 292 purposes. And on the issue whether the warranty cards are "marked upon,"
22 "affixed to," or "used in advertising in connection with," the Court finds that the warranty cards do
23 none of those things.

24      First, the warranty cards and their contents are not marked upon the eyewear or upon the
25 outer packaging. Thus, Bugaboos' counterclaim fails as a matter of law as to this portion of the
26 statute. The Court finds unpersuasive the argument that the warranty cards are incorporated onto
27 the outer packaging. The Court also finds unpersuasive the argument that something found inside
28 the packaging can be subject to the false marking statute. Second, the warranty cards cannot be

affixed to the glasses by virtue of close proximity. Bugaboos counterclaim fails as a matter of law as to this portion of the statute. And finally, the warranty cards are not advertising as a matter of law. The plain meaning of "advertising" and its construction under the Lanham Act forecloses the possibility that warranty cards found inside packaging and available to consumers only after purchase can be considered advertising.

No issues of material fact remain. Oakley's motion for summary judgment on the issue whether the warranty cards can be subject to § 292 liability is **GRANTED**. The warranty cards are not subject to § 292 liability.

## BUGABOOS' RULE 56(f) MOTION

Bugaboos argues that it "has been unfairly prejudiced by Oakley's premature summary judgment motion and requests additional discovery responses so that it can fully expose Oakley's false marking practices." (Opp'n at 23.)

Rule 56(f) allows the Court to deny or continue a motion for summary judgement if the opposing party needs time to discover essential facts. *Garrett v. City and Cnty. of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). To obtain a Rule 56(f) continuance, a party must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998). If the moving party can make this showing, rule 56(f) "requir[es], rather than merely permit[s]," an opportunity for additional discovery. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

Bugaboos argues that "Oakley has still not produced all versions of the warranty cards that are the subject of its motion and has still not produced all samples of its products, product packaging and marking for eyewear products." (Opp'n, LaPorte Decl. ¶ 12.) The Court finds that these sought-after-facts are not essential to resist Oakley's motion for summary judgment.

Obtaining all versions of the warranty cards would not overcome the fact that the warranty cards are not subject to the false marking statute as a matter of law. Bugaboos' attempts to subject

the warranty cards to false marking liability fail for reasons that cannot be remedied by additional facts. For instance, Bugaboos argues that the warranty cards are "marked upon" the packaging because of a turn-of-phrase found on the packaging. The Court rejects this theory. Reviewing additional warranty cards would not solve Bugaboos' shortcomings.

Bugaboos also requests discovery on additional "products, product packaging and marking for eyewear products." (*Id.*) These requests are unrelated to the motion at hand, which concerns the warranty cards only.

Bugaboos requests the Court to continue or deny Oakley's motion for summary judgment pending further discovery. But the Court finds that the additional discovery Bugaboos requests is orthogonal to the motion being considered. Thus, Bugaboos Rule 56(f) motion is **DENIED.**

## CONCLUSION

In response to Bugaboos' counterclaim for false marking under 35 U.S.C. § 292, Oakley motioned for summary judgment on the issue whether its warranty cards could be subject to false marking liability. For the reasons stated above, the Court **GRANTS** Oakley's motion for summary judgment. Oakley's warranty cards are not subject to 35 U.S.C. § 292 liability. Moreover, the Court **DENIES** Bugaboos' requests to deny Oakley's motion as untimely and for additional discovery under Rule 56(f).

**IT IS SO ORDERED.**

DATED: December 15, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge